COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ALL BY GRACE HOME HEALTH CARE, INC., | § | No. 08-22-00223-CV |
| | § | Appeal from the |
| Appellant, | | |
| | § | 353rd Judicial District Court |
| v. | | |
| | § | of Travis County, Texas |
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION, | § | (TC# D-1-GN-20-004307) |
| Appellee. | | |

## MEMORANDUM OPINION

This case involves judicial review of a state administrative agency order. Appellee Texas Health and Human Services Commission (HHSC) issued an order fining and revoking the license of Appellant All By Grace Home Health Care, Inc. (ABG). ABG argues HHSC's order failed to consider a mandated factor and was not supported by substantial evidence. For the reasons set forth below, we affirm.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

ABG is a Home and Community Support Services Agency licensed by HHSC. In a survey of ABG's operations,[2] HHSC staff tagged a number of regulatory violations, including that ABG allegedly failed to:

(1)     enforce its policies requiring availability of an administrator and nursing supervisor at all times (Tag Z-108);

(2)     manage its daily operations in compliance with these policies (Tag Z-117);

(3)     ensure its supervising nurse or an alternative was available at all times (Tag Z-139);

(4)     ensure accurate and timely documentation of its services (Tag Z-125);

(5)     ensure its employees were qualified (Tag Z-126);

(6)     employ a person meeting applicable home-health-aide requirements (Tag Z-708);

(7)     ensure care was performed in accordance with written plans of care (Tag Z-141);

(8)     conduct criminal history checks on employees (Tag Z-194);

(9)     conduct nurse aid registry (NAR) and employee misconduct registry (EMR) searches on employees prior to client contact (Tag Z-196)[3];

(10)    conduct NAR and EMR searches on employees annually (Tag Z-199);

(11)    review its emergency preparedness and response plan annually (Tag Z-289);

(12)    conduct an emergency drill annually (Tag Z-291);

(13)    ensure use of standard practices to prevent spread of infection (Tag Z-390);

(14)    ensure effective exchange of information, reporting, and coordination of services with a physician (Tag Z-408);

---

[2] The survey was performed by the Texas Department of Aging and Disability Services (DADS), HHSC's predecessor. *See* TEX. GOV'T CODE ANN. §§ 531.0202(b) and 531.02001(2)(B) (abolishing DADS and transferring its functions to HHSC). We refer to both DADS and HHSC as HHSC.

[3] NAR and EMR are searchable databases that identify individuals who are unemployable. HHSC requires licensees to search these databases before hiring an employee and annually thereafter. 40 TEX. ADMIN. CODE § 97.247(a)(3) and (a)(5) (2019) (HHSC, Verification of Employability and Use of Unlicensed Persons), *transferred by* 44 TEX. REG. 1893 (2019), *amended by* 46 TEX. REG. 2427 (2021).

(15)    ensure availability of backup services, a deficiency that existed for about a year (Tag Z-423);

(16)    provide clients with timely advance notice of intent to discharge (Tag Z-439);

(17)    perform required annual supervision visits (Tag Z-546);

(18)    provide HHSC with copies of requested client records during the survey (Tag Z-668); and

(19)    provide timely access to its facility, thereby willfully interfering with the survey (Tag Z-670).

The survey classified all these violations as Level-B except the last two, which were not assigned a violation level.

Under HHSC regulations, a violation is classified as Level-A, Level-B, or unassigned. Level-A violations involve "minor or no client health or safety significance" and, with certain exceptions, cannot result in an administrative penalty without the licensee first being provided an opportunity to correct the deficiency. 40 TEX. ADMIN. CODE §§ 97.602(h)(2)(B)-(C) and 97.602(d)(1) (2019) (HHSC, Administrative Penalties), *transferred by* 44 TEX. REG. 1893 (2019), *amended by* 46 TEX. REG. 2427 (2021).[4] Level-B violations are ones that "result[] in serious harm to or death of a client," "constitute[] an actual serious threat to the health or safety of a client," or "substantially limit[] [a licensee]'s capacity to provide care." *Id.* at § 97.602(h)(3)(B)(i-iii). Unassigned violations include specific enumerated acts such as making a false statement to HHSC, refusing to allow HHSC to inspect a record, willfully interfering with HHSC's work, and failing to pay a fine. *Id.* at § 97.602(e)(4)-(5)(A-E). Unlike Level-A violations, neither Level-B nor unassigned violations require HHSC to provide an opportunity to correct before imposing an administrative penalty. *Id.* at § 97.602(h)(3)(D) and (e)(1)-(3) (Level-B violations); and §

---

[4] The relevant regulations were located in title 40, Chapter 97 of the Texas Administrative Code at the time of the survey. These regulations, as amended, are now located in title 26, Chapter 558.

97.602(i)(1) (unassigned violations).

Based on the violations tagged, HSSC concluded that ABG should be fined a total of $13,750 and its license should be revoked. HHSC notified ABG of its findings and instructed it to file an acceptable plan of correction, which ABG did. Instructions for filing an acceptable plan of correction are always included in the official notice of survey findings, and such a plan does not preclude HHSC from taking enforcement action. 40 TEX. ADMIN. CODE § 97.527(g), (h) (2019) (HHSC, Post-Survey Procedures), *transferred by* 44 TEX. REG. 1893 (2019), *amended by* 46 TEX. REG. 2427 (2021). HHSC further notified ABG of its right to request a formal administrative hearing to contest the findings and penalties, which ABG also did.

A single hearing was held by an Administrative Law Judge (ALJ) to address all issues. The ALJ's proposal for decision recommended that ABG's license be revoked and that: (1) Tags Z-108 and Z-117 be combined into one item; (2) Tags Z-126 and Z-708 be combined into one item; (3) Tags Z-423 and Z-546 be reduced from Level-B to Level-A; (4) Tag Z-670 be rejected as unfounded; and (5) total fines be reduced from $13,750 to $9,750. HHSC adopted these recommendations in their entirety in its final order and ABG filed a petition for judicial review. The trial court affirmed HHSC's final order and ABG appealed.

## STANDARD OF REVIEW

HHSC administrative hearings are referred to the State Office of Administrative Hearings (SOAH), 1 TEX. ADMIN. CODE § 357.484(d) (2023) (HHSC, Request for a Hearing), and governed by Chapter 2001 of the Texas Government Code (the Administrative Procedure Act or APA). 40 TEX. ADMIN. CODE § 97.601(h)(4) (2019) (HHSC, Enforcement Actions), *transferred by* 44 TEX. REG. 1893 (2019), *amended by* 46 TEX. REG. 2427 (2021). The APA provides for judicial review by a Travis County District Court. TEX. GOV'T CODE ANN. §§ 2001.171, 2001.176(b)(1).

4

Because the scope of judicial review is not defined under HHSC's regulations, *see* 40 TEX. ADMIN. CODE § 97.601(h), the substantial evidence standard applies. TEX. GOV'T CODE ANN. § 2001.174.

Whether an administrative agency's decision is supported by substantial evidence is a question of law, which we review de novo. *Tex. Dep't of Family & Protective Services v. Drozd*, No. 03-09-00507-CV, 2010 WL 3191786, at *9 (Tex. App.—Austin Aug. 12, 2010, no pet.) (mem. op.). Like the trial court, we review whether the agency's findings of fact are supported by substantial evidence, and we review its legal conclusions for errors of law. *Id.* at *8. The proper test is whether the evidence in its entirety is such that reasonable minds could have reached the conclusion the agency reached or whether the agency acted arbitrarily and without regard to the facts. *Id.*

The crux of substantial-evidence analysis is whether the agency's findings are reasonable in light of the evidence. *Id.* at *9. The evidence may preponderate against the agency's decision and still provide a reasonable basis for the decision. *Id.* The fact-finder—here, the ALJ appointed by SOAH—determines the credibility of witnesses and the weight of their testimony, and we cannot set aside the ALJ's decision merely because testimony was conflicting or disputed or did not compel the decision. *Id.* An ALJ's decision is presumed valid, and the complaining party has the burden to show a lack of substantial evidence. *Id.*

## ANALYSIS

ABG raises two issues on appeal, arguing HHSC's final order adopting the ALJ's findings and recommendations (1) failed to consider a mandated factor and (2) was not supported by substantial evidence.

### A. The HHSC's final order did not fail to consider a mandated factor

An administrative agency's decision is arbitrary and capricious if it: fails to consider a

factor the legislature directs it to consider; considers an irrelevant factor; or weighs only relevant factors but still reaches a completely unreasonable result. *City of El Paso v. Public Util. Comm'n of Texas*, 883 S.W.2d 179, 184 (Tex. 1994); *see also Park Haven, Inc. v. Tex. Dep't of Human Services*, 80 S.W.3d 211, 215 (Tex. App.—Austin 2002, no pet.) (ALJ's decision was arbitrary and capricious because it failed to consider factor mandated by agency's own regulations).

Here, ABG argues that the ALJ failed to consider a factor mandated by one of HHSC's own regulations, 40 TEX. ADMIN. CODE § 97.602(b)(2),[5] which requires that, "[i]n determining which violation warrants a penalty," HHSC must consider "whether the [licensee] identified the violation as part of its internal quality assurance program and made a good faith, substantial effort to correct the violation in a timely manner."

However, ABG does not contend that it made a good faith effort to correct any violations identified in its own internal quality assurance process. Instead, ABG contends that it filed and followed an acceptable plan of correction in a good faith effort to correct violations identified in HHSC's survey. But unlike pre-survey corrective efforts made under a licensee's own self-imposed quality assurance process, post-survey corrective efforts made under an HHSC-mandated plan of correction are not required to be considered by HHSC under § 97.602(b)(2) in determining whether a penalty is warranted. We thus hold ABG failed to meet its burden to show that HHSC's final order failed to consider a factor mandated by § 97.602(b)(2).

Issue one is overruled.

## B. HHSC's final order was supported by substantial evidence

In its second issue, ABG argues that HHSC's final order disallowing ABG an opportunity

---

[5] Throughout its brief, ABG cites the current versions of the relevant regulations. We cite the versions effective at the time of the survey. There are no relevant substantive differences.

to correct deficiencies was not supported by substantial evidence. In support of its argument, ABG contends: (1) 40 TEX. ADMIN. CODE § 97.601(a) empowers HHSC to take enforcement actions, including license revocation and assessment of administrative penalties, only where certain conditions are met; (2) where HHSC is authorized to assess a penalty, it must do so in accordance with the criteria specified in § 97.602(b)(1); and (3) § 97.602(e) forbids HHSC from assessing penalties without providing a licensee an opportunity to correct deficiencies except in certain egregious circumstances.

However, the plain language of each of these regulations provides otherwise. First, 40 TEX. ADMIN. CODE § 97.601(a) imposes no conditions on HHSC in taking an enforcement action; instead, it merely lists the types of action that may be taken. Second, § 97.602(b) applies only to "administrative penalties," which means fines, as indicated by § 97.602(j) ("administrative penalty" involves an "amount") and §§ 97.602(h)(2)(D) and (3)(E) (tables of monetary amounts). And third, § 97.602(e) likewise applies only to "administrative penalties." Further, the factors HHSC must consider in revoking a license are found elsewhere—namely, in 40 TEX. ADMIN. CODE § 97.601(c). Because revoking a license and assessing administrative penalties are governed by different standards, we consider them separately.

### (1) License revocation

HHSC is broadly empowered to revoke a license when the licensee violates its regulations. 40 TEX. ADMIN. CODE § 97.601(c)(1). ABG does not argue that it committed no such violation. Instead, it argues that the record does not support HHSC's decision to revoke its license without giving ABG an opportunity to correct its deficiencies. However, neither § 97.601(c) nor any other provision within HHSC's regulations or statute requires HHSC to provide ABG an opportunity to correct its deficiencies before revoking its license. And we must apply the plain language of the

7

law as written; we cannot read requirements into the law. *Cadena Commercial USA Corp. v. Tex. Alco. Bev. Comm'n*, 518 S.W.3d 318, 325, 338 (Tex. 2017). As a result, HHSC's revocation of ABG's license can be overturned only if ABG can show that all violations upheld by the ALJ were unsupported by substantial evidence. No such showing has been made. In fact, as discussed below, ABG does not even address the merits of most of the violations at issue, any one of which could form the basis for revoking ABG's license. We thus hold ABG failed to meet its burden to show that substantial evidence did not support HHSC's revocation of ABG's license.

### (2) Administrative penalties

As noted above, before HHSC can impose an administrative penalty (fine), a licensee is generally entitled to an opportunity to correct Level-A violations, but not Level-B or unassigned violations. *See* 40 TEX. ADMIN. CODE § 97.602(h)(2)(C) and (d)(1) (Level-A); § 97.602(h)(3)(D) and (e)(1)-(3) (Level-B violations); and § 97.602(i)(1) (unassigned violations). Here, all but two of the violations upheld by the ALJ were classified as Level-B or unassigned. ABG challenges the classification of these violations as non-correctable on a number of grounds.

First, ABG contends that no violation resulted in "actual harm" to a client. However, neither a Level-B nor an unassigned violation requires actual harm. That is, a Level-B violation requires only a serious threat to client health or safety or substantial limitation of a licensee's capacity to provide care, *see id.* at § 97.602(h)(3)(B), and an unassigned violation requires only the occurrence of prohibited conduct, *see id*. at § 97.602(e)(5)—here, a refusal to allow HHSC to inspect client-care records—which ABG does not dispute occurred.

Second, ABG contends that while the ALJ found certain violations substantially limited ABG's ability to provide care, in ABG's view, these findings are undermined by the ALJ's recognition that ABG's ability to provide care was not so limited that any client was actually

8

harmed. This argument is unavailing, as actual harm is not required for a finding that a violation substantially limits the ability to provide care.

Third, ABG contends that many of the alleged violations occurred during a brief period of confusion while Jennifer Samuels, ABG's administrator and nursing supervisor, was on an emergency trip overseas. However, ABG points to no provision of HHSC's regulations or other law that would require HHSC to lower the level of any violation in light of such circumstances.

Fourth, in regard to Tag 117, ABG challenges the ALJ's finding that HHSC's inability to reach Ms. Samuels by phone at various points during her overseas trip "affected [ABG's] operation in that the Survey could not be conducted and completed as required." ABG contends this finding is contradicted by testimony that the survey was in fact completed. However, the ALJ did not find that the survey was *never* completed, but rather that it was not completed "as required." Evidence cited by the ALJ shows that Ms. Samuels's lack of availability interfered with the survey, including, for example, by delaying the exit interview. That is, Ms. Samuels herself was unavailable to participate in the interview because she was overseas, and ABG's alternate administrator, Mr. Samuels, refused to participate, making it necessary to postpone the interview. In addition, the ALJ found that Ms. Samuels's lack of availability also created a risk of client neglect since ABG was "essentially left . . . without an appropriate and/or willing alternate administrator or alternate supervising nurse." ABG does not contend that no such risk existed, only that no actual harm occurred.

Fifth, in regard to Tag Z-139, ABG challenges the ALJ's finding that Ms. Samuels, as ABG's administrator and nursing supervisor, failed to "always be available to [ABG] personnel, in person or by telephone." ABG contends this finding is contradicted by Ms. Samuels's own testimony that she was "available to [her] clients 24 hours a day by telephone the entire time [she

9

was] out of the country." However, the ALJ noted, Ms. Samuels also testified that during her trip she would have been unavailable "when the battery on [ABG's] cell phone died or she was 'enroute somewhere.'" Conflicts in testimony and the credibility of witnesses are matters within the ALJ's purview, which this Court does not second-guess. *Drozd*, 2010 WL 3191786, at \*9. In addition, like the ALJ's finding in regard to Tag Z-117, the ALJ's finding here was based in part on a concern that, apart from Ms. Samuels's personal unavailability, the unavailability of alternative or backup personnel posed a risk to ABG's clients: "the ALJ is concerned with Ms. Samuels's apparent lack of understanding of the seriousness of not having a nurse available at all times. She simply maintains that everyone can reach her and therefore there is no need to worry about being able to contact anyone else to serve as a nurse." Again, ABG does not contend this concern was unfounded, only that no actual harm occurred.

Sixth, while ABG contends that *no* violation warranted denial of an opportunity to correct, ABG discusses only violations related to Ms. Samuels's overseas trip. In fact, most of the Level-B and unassigned violations upheld by the ALJ were unrelated to this trip, including: failure to ensure accurate and timely documentation of services (Tag Z-125); failure to ensure employees were qualified (Tag Z-126); failure to employ a person meeting applicable home-health-aide requirements (Tag Z-708); failure to ensure care was performed in accordance with written plans of care (Tag Z-141); failure to conduct criminal history checks on employees (Tag Z-194); failure to conduct NAR and EMR searches on employees prior to client contact (Tag Z-196); failure to conduct NAR and EMR searches on employees annually (Tag Z-199); failure to review emergency preparedness and response plan annually (Tag Z-289); failure to conduct an emergency drill annually (Tag Z-291); failure to ensure use of standard practices to prevent spread of infection (Tag Z-390); failure to ensure effective exchange of information, reporting, and coordination of

10

services with a physician (Tag Z-408); failure to provide clients with timely advance notice of intent to discharge (Tag Z-439); and failure to provide HHSC with copies of requested client records during the survey (Tag Z-668). ABG does not address the merits of these violations.[6]

We thus hold ABG has failed to meet its burden to show that HHSC's designation of any violation as Level-B or unassigned was unsupported by substantial evidence, and as a result ABG has failed to show it was entitled to avoid being fined by correcting any of these violations.[7]

Issue two is overruled.

## CONCLUSION

We affirm the trial court's judgment affirming HHSC's final order fining ABG and revoking its license.

LISA J. SOTO, Justice

August 14, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

---

[6] ABG also makes no mention of Tags Z-423 and Z-546, which the ALJ reduced from Level-B to Level-A. Because ABG does not argue it should have been given an opportunity to correct these violations as a result of their reduction to Level-A, we express no opinion regarding this issue.

[7] Even if ABG had succeeded in showing that HHSC misclassified one or more violations, other barriers may have stood in the way of ABG being able to avoid fines by correcting minor deficiencies under its plan of correction. We express no opinion regarding such matters, including for example, whether a licensee remains entitled to avoid fines by correcting such deficiencies where HHSC is taking action to revoke its license.